People v Santos (2025 NY Slip Op 50854(U))

[*1]

People v Santos

2025 NY Slip Op 50854(U)

Decided on May 28, 2025

Criminal Court Of The City Of New York, Bronx County

Moore, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 28, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against
Rafael Santos, Defendant.

Docket No. CR-021232-24BX

For the Defendant: 
The Bronx Defenders
(by: Alyssa Harriston, Esq.)
For the People: 
Darcel D. Clark, District Attorney, Bronx County
(by: ADA Malik Ketchum)

Deidra R. Moore, J.

On August 17, 2024, Defendant Rafael Santos (herein after "Defendant") was arrested and charged with Vehicle and Traffic Law ("V.T.L.") § 1192[2] and related charges.
Defendant moves for dismissal of the accusatory instrument pursuant to Criminal Procedure Law ("C.P.L.") §§ 30.30.[1][c] and 170.30[1][e]. Defendant contends that the statutory speedy trial period has elapsed because the People did not comply with their discovery obligations pursuant to C.P.L. §§ 245.20[1] and 245.50[3].
Upon review and consideration of the submissions, court file and relevant legal authority, the Court finds that the prosecution did not validly declare its readiness for trial within the statutorily allowed ninety-day speedy trial period. Therefore, Defendant's motion is GRANTED.
 RELEVANT PROCEDURAL BACKGROUND
On August 18, 2024, Defendant was arraigned on a top charge of V.T.L. § 1192[2], Driving while Intoxicated, an unclassified misdemeanor. Defendant was released on his own recognizance and the case was adjourned to September 17, 2024, for conversion and discovery compliance.
At the September 17, 2024, appearance, the prosecution served no supporting deposition or discovery. The case was adjourned to November 6, 2024, for conversion and compliance. On November 6, 2024, no supporting deposition or discovery was served. The case was adjourned to December 9, 2024, again for conversion and compliance. On November 14, 2024, the prosecution filed and served, off-calendar, a certificate of compliance ("COC") and statement of [*2]readiness ("SOR").[FN1]

On December 9, 2024, the case was adjourned to January 17, 2025, for discovery conference. Defense counsel e-mailed the assigned prosecutor her discovery objections on December 19, 2024. The assigned prosecutor replied to defense counsel's objections on January 16, 2025.
At the January 17, 2025, discovery conference, Defendant noted that several discoverable items remained outstanding, and the parties were ordered to continue to confer. The matter was adjourned to February 25, 2025, for a continued discovery conference. On February 22, 2025, the prosecution filed and served a supplemental certificate of compliance ("SCOC") and statement of readiness.
The parties appeared on February 25, 2025. Defendant requested and was granted a motion schedule. While the instant motion was pending, the prosecution filed and served two additional supplemental certificates of compliance, on April 2, 2025, and April 10, 2025.

LEGAL FRAMEWORK
The prosecution must be ready for trial within ninety days of the commencement of the criminal action where, as here, the top count charged is a misdemeanor punishable by more than three months' imprisonment (see C.P.L. § 30.30[1][b] and V.T.L. § 1193[1][b][i]).
Computation for speedy trial purposes begins with the day after the commencement of the criminal action (People v Stiles, 70 NY2d 765 [1987]. The speedy trial clock is tolled when the People file and serve a valid certificate of compliance and statement of readiness, affirming that they have complied with their discovery obligations and are ready for trial (C.P.L. §§ 30.30[5], 245.50[1] and 245.50[3]).
The prosecution must disclose to the defense "all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control" (C.P.L.§ 245.20[1]). Discoverable items in the custody or control of "any New York state or local police or law enforcement agency" are "deemed to be in the possession of the prosecution" (C.P.L. § 245.20[2]). The prosecution must provide all discoverable material to the defense except that which has been lost or destroyed (C.P.L. § 245.80) or is the subject of a protective order (C.P.L. § 245.70[1]). If the People require additional time to comply with their discovery obligations, they may, upon a showing of good cause, move the court to allow such an extension (C.P.L. § 245.70[2]).
After the People have turned over all materials subject to discovery, they must file with the court and serve on the defense a certificate of compliance, certifying that they have exercised due diligence and made reasonable inquiries to fulfill their discovery obligations (C.P.L. § 245.50[1]. Absent "an individualized finding of special circumstances," the People may not validly declare their readiness for trial until they have provided all discoverable material to the defense and filed a proper COC (C.P.L. § 245.50[3]).
The Defense must alert the prosecution to "any potential defect or deficiency" with the certificate of compliance "as soon as practicable" (C.P.L. § 245.50[4][b]).
When the defense disputes the validity of a certificate of compliance, the burden is on the [*3]prosecution to show "that they did, in fact, exercise due diligence and [make] reasonable inquiries prior to filing the initial COC" (People v Bay, 41 NY3d 200, 213 [2023]). In People v. Bay, the Court of Appeals enumerated multiple factors to consider when evaluating due diligence, including: the prosecution's efforts to comply with their discovery obligations; the volume of discovery provided, and the amount of discovery outstanding; the complexity of the case; how obvious missing discovery would be to a prosecutor exercising due diligence; any explanations for the discovery lapse; and the prosecution's response when apprised of missing discovery (Id. at 212).

DISCUSSION
I. The Parties' Arguments
Defendant contends that the prosecution's initial certificate of compliance was invalid—and the accompanying statement of readiness illusory—as the prosecution failed to disclose multiple discoverable items prior to filing. The defense notes that the prosecution had not disclosed the memo books of eight officers who responded to the scene. Additionally, the defense maintains, the prosecution purported to serve impeachment material for a testifying officer—consisting of 109 pages detailing a lawsuit against PO Acosta—but the folder containing this impeachment material was empty. The defense did not receive the memo books and lawsuit information (herein after "the Compres folder") until February 3, 2025 (Defense Motion at 5).[FN2]

Defendant avers that, according to the enumerated Bay factors, the prosecution did not act with due diligence prior to filing their initial COC. Specifically, Defendant argues that the belatedly disclosed material, 156 pages in total, comprises a large portion of the total discovery and that the case is not a complex one entailing voluminous discovery (Defense Reply at 6). Defendant further contends that a prosecutor exercising due diligence would have noticed that the memo books were missing and that the Compres folder was empty. Finally, Defendant notes that the prosecution details only two attempts by e-mail to obtain the outstanding memo books prior to filing the COC, one on the eighty-first chargeable day and one on the eighty-eighth chargeable day, and that the prosecution does not offer any factual details about their due diligence with regard to the Compres folder (Defense Reply at 15).
The prosecution contends that they exercised due diligence and made reasonable inquiries prior to the filing of the initial COC. With regard to the memo books, the People affirm that they e-mailed a general request to the discovery liaison at the 48th precinct on September 5, 2025, and that they e-mailed the discovery liaison and responding officers to specifically request the outstanding memo books on two subsequent dates prior to filing the initial COC. The People detail three additional e-mail requests for the outstanding memo books following the filing of the initial COC (People's Opposition at 8-9).
With regard to the Compres folder, the People affirm that they disclosed the existence of the lawsuit against PO Acosta on the "Giglio information sheet" that they shared with the defense prior to the initial COC's filing. The People state that they were "unaware" that the Compres folder was empty until the discovery conference which occurred on January 17, 2025, and that they promptly shared the contents of the folder on January 26, 2025 (People's Opposition at 18-19).
The Court's Analysis
A. The Memo Books
The discoverability of officers' memo books is not in dispute. Memo books, or Activity Log Reports, must be shared pursuant to CPL § 245.20[1][e], which requires disclosure of all written or recorded statements made by persons with relevant information about the incident charged, including law enforcement personnel. Possession of memo books is imputed to the prosecution under C.P.L. § 245.20[2].
Here, the People provided Defendant with body-worn camera files from ten officers, but memo books from only two officers (Defense Motion Exhibit D). The memo books of eight of the ten responding officers remained outstanding at the time the certificate of compliance was filed. Even a quick review of the disclosed material would have alerted a diligent prosecutor to the omission of the eight memo books. 
Moreover, the prosecution's own affirmation acknowledges awareness of the missing memo books prior to the COC's filing. The assigned prosecutor sent two emails, dated November 7 and November 14, 2024, to the 48th Precinct's discovery liaison and to the officers involved in the case, specifically requesting the "memo books of responding officers" (People's Opposition at 9). These communications, which placed particular emphasis on obtaining the memo books, demonstrate the prosecution's knowledge of the missing items. Ultimately, however—despite knowledge of the outstanding memo books—the prosecution filed the certificate of compliance on November 14, 2024. Notably, nowhere does the prosecution's COC mention the existence and status of the outstanding memo books. To the contrary, the COC certifies—inaccurately—that "after exercising due diligence and making reasonable inquiries" the People had "disclosed and made available to the defendant all known material and information subject to discovery under CPL § 245.20(1)" (Defense Motion Exhibit D).
Consequently, the Court cannot find that the People acted with the requisite due diligence. The first targeted effort to obtain the eight outstanding memo books was made by the People eighty-one days after arraignment—and more than two months after the People's general discovery request to the precinct. The prosecution followed up with the precinct's discovery liaison on November 14, 2024—the eighty-eighth chargeable day—then proceeded to file their COC that same date, despite the non-disclosure of the eight memo books.
Article 245 contains an explicit safeguard by which the prosecution may obtain additional time to comply with their discovery obligations. C.P.L. § 245.70[2] provides that, "[u]pon motion of a party in an individual case, the court may alter the time periods for discovery imposed by this article upon a showing of good cause." When the People face obstacles to sharing all discoverable items within their statutory deadline, they may seek an extension of the deadline under this statutory provision. What the People may not do, however, is file a certificate of compliance—certifying that they have disclosed all discovery in their [*4]possession—when this is not, in fact, the case (See People v. Diallo, 78 Misc 3d 1218(A) [Crim Ct, Bronx County 2023] [Where the People failed to request additional time under C.P.L. § 245.70[2] to comply with their discovery obligations, and instead filed a COC despite outstanding materials, the court rejected "what is effectively an untimely application for a deadline extension or alteration pursuant to Article 245, nunc pro tunc."])
C.P.L. § 245.70[2] is one of multiple tools the prosecution may utilize when faced with the dilemma of an impending deadline and outstanding discovery items:
[T]he People are not without recourse when the NYPD is slow to respond to discovery requests. The People may, for example, request an extension of their discovery deadline under CPL § 245.70[2] and an extension of the CPL § 30.30 clock under CPL § 30.30[4][g]. Alternatively (or additionally), they may request a so-ordered subpoena from the Court. What the People may not do when they are aware of outstanding discovery is give up, file their COC, and then ask the Court for forgiveness—instead of permission—for the belated disclosure. (People v Almanzar, CR-027825-24BX, J. Ortner [Crim Ct, Bronx County 2025].
This Court concurs with the reasoning in both People v Diallo, 78 Misc 3d 1218(A) [Crim Ct, Bronx County 2023] and People v Almanzar, CR-027825-24BX, J. Ortner [Crim Ct, Bronx County 2025], and finds that the People's actions here similarly fail to demonstrate due diligence. Although CPL § 245.70[2] permits the prosecution to seek a good cause extension of their discovery deadline, no such application was made here. Nor did the People seek an extension of the speedy-trial clock pursuant to C.P.L. § 30.30[4][g].
The People concede that they knew several memo books remained outstanding on the day the COC was filed. As the end of their speedy-trial period approached, however, the People did not avail themselves of any of the tools at their disposal. Instead, the prosecution gave up, filed the COC, and now makes what is essentially an untimely application for a deadline extension (People v. Diallo, 78 Misc 3d 1218(A) [Crim Ct, Bronx County 2023]). Consequently, the Court cannot find that the People filed the initial COC in good faith after exercising due diligence.
B. The Compres Folder
The people maintain they were made aware of the empty Compres folder at the January 17, 2025, discovery conference, and that they then promptly produced the missing impeachment material on January 26, 2025. However, defense counsel alerted the assigned prosecutor of the empty folder more than a month earlier, on December 19, 2024 (Defense Motion Exhibit E). The prosecution fails to explain why the folder was empty or what steps, if any, were taken to verify the contents after defense counsel's initial notice.
Although technical issues with digital discovery may arise, the prosecution provides no details to suggest a glitch caused the issue. And in light of the People's demonstrated lack of diligence regarding the memo books, the Court views this incident as part of a broader pattern. The prosecution thus has not met its burden to show that it exercised due diligence in disclosing the Compres folder's contents before the initial COC was filed. 
Ultimately, the Court finds that the COC dated November 14, 2024, is invalid. Multiple [*5]discoverable items, including several that the prosecution knew about, remained outstanding at the time of the initial COC's filing. The People knew that eight of the ten responding officers' memo books had not been shared with Defendant as of November 14, 2024. Instead of seeking an extension of their discovery deadline pursuant to C.P.L. § 245.70[2], or an extension of the speedy-trial clock pursuant to C.P.L. § 30.30[4][g], the prosecution filed a COC which certified—inaccurately—that "the People have disclosed and made available to the defendant all known material and information that is subject to discovery under CPL § 245.20[1]." The People may not now retroactively seek forgiveness for belated disclosures when they could have timely sought additional time under the statutory safeguards available to them (People v Diallo, 78 Misc 3d 1218(A) [Crim Ct, Bronx County 2023]; People v Almanzar, CR-027825-24BX, J. Ortner [Crim Ct, Bronx County 2025]). Additionally, the prosecution fails to detail their efforts to ensure disclosure of the contents of the Compres folder and consequently does not carry their burden to establish that they acted with due diligence with regard to this item (People v Bay, 41 NY3d 200, 213 [2023]).
The belatedly disclosed discovery comprises 156 pages, and was not shared until January 26, 2025, at the earliest [FN3]
161 days after Defendant was arraigned. As the supplemental certificate of compliance was not filed and served until February 22, 2025, this is the earliest date at which the speedy-trial clock could have been tolled.[FN4]

THE CPL § 30.30 CALCULATION
The speedy-trial clock commenced on August 19, 2024, the day following defendant's arraignment. The case was adjourned for supporting deposition and discovery compliance to September 17, 2024 (August 19, 2024 — September 17, 2024 = 30 days charged). On September 17, 2024, the prosecution was not converted and not compliant. The case was adjourned to November 6, 2024 (September 18, 2024 — November 6, 2024 = 50 days charged). On November 6, 2024, the prosecution was not converted and not compliant. The case was adjourned to December 9, 2024. The prosecution filed and served, off-calendar, a COC and SOR [*6]on November 14, 2024. However, as discussed above, the COC was invalid and therefore failed to toll the speedy-trial clock. The earliest possible tolling of the speed-trial clock occurred when the supplemental certificate of compliance and statement of readiness were filed on February 22, 2025 (November 7, 2024 — February 22, 2025 = 108 days charged. Accordingly, at least 188 days are chargeable to the People, and the prosecution's speedy trial clock has elapsed.

CONCLUSION
Upon review and consideration of the submissions, court file and relevant legal authority, Defendant's motion to dismiss pursuant to CPL §§ 245.50[4][c], 170.30[1][e], and 30.30 is GRANTED.
This constitutes the opinion, decision, and the order of the Court.
Dated: May 28, 2025
Bronx, New York
Hon. Deidra R. Moore, J.C.C.

Footnotes

Footnote 1:The People also filed and served a superseding information on November 12, 2024.

Footnote 2:The People affirm that they first shared the memo books on January 26, 2025, and that defense counsel notified the prosecution by e-mail on February 3, 2025, that the memo books had not been received. The People then re-shared the memo books on February 3, 2025, specifically including the Bronx Defenders discovery hub e-mail (People's Opposition at 9).

Footnote 3:The People assert that the belatedly disclosed material was shared on January 26, 2025. Defendant contends that this material was not received until February 3, 2025. In either case, the speedy-trial clock continued to run, as the SCOC was not filed until February 22, 2025.

Footnote 4:The Court cannot rule on the propriety of the February 22, 2025, supplemental certificate of compliance, as it lacks substantive information about the discovery purportedly shared with the SCOCs dated April 2, 2025, and April 10, 2025. Because a supplemental certificate of compliance must enumerate newly disclosed items and explain the reason for their belated disclosure, these filings necessarily shed light on the propriety of the certificates of compliance filed prior. Without additional information about the April 2025 SCOCs, the Court cannot rule on the validity of the February 22, 2025, SCOC. Additionally, while Defendant asks the Court to invalidate both April 2025 SCOCs, stating that no additional discovery was received contemporaneous with the filings, the Court cannot rule on the propriety of these SCOCs without hearing from the People. Moreover, as the Court's finding regarding the November 14, 2024, COC is dispositive, the propriety of all subsequent SCOCs is not decided here.